**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 25-23617-CV-WILLIAMS**

UNITED STATES OF AMERICA,

Plaintiff,

v.

HENRY BRICENO,

Defendants.

________________________________ /

**ORDER**

**THIS MATTER** is before the Court on Defendant Henry Briceno's ("***Mr. Briceno***") Motion to Dismiss Plaintiff's Complaint (DE 11) ("***Motion***"). The Motion is fully briefed and ripe for review.[1] For the reasons set forth below, Defendant's Motion (DE 11) is **DENIED**.

## I. BACKGROUND

On August 12, 2025, Plaintiff United States of America ("***Plaintiff***" or "***United States***") filed their Complaint to Revoke Naturalization (DE 1) ("***Complaint***"). In the Complaint, the United States alleges that Mr. Briceno fraudulently acquired his citizenship by concealing his criminal activity when he filed for naturalization. (DE 1 at 1–2).

Mr. Briceno was born in Venezuela. (DE 1-1 ¶ 5). On January 25, 1999, Mr. Briceno was admitted to the United States on a visitor's visa. (*Id.*) He eventually married a United States citizen and became a lawful permanent resident. (*Id.* ¶ 6). On October 28, 2009, Mr. Briceno filed a Form N-400 or "Application for Naturalization." (*Id.* ¶ 11). On the application, Mr. Briceno was asked whether he had ever "committed any crime for

[1] Plaintiff filed a Response (DE 12), and Mr. Briceno filed a Reply (DE 14).

which [he] had not been arrested," and he answered that he had not. (*Id.* ¶ 39). He then attended his naturalization interview on January 19, 2010. (*Id.* ¶ 38). Mr. Briceno was asked the same question, whether he had ever committed a crime or offense for which he was not arrested, and he again answered that he had not. (*Id.* ¶ 39). The same day as his interview, Mr. Briceno's Application for Naturalization was approved. (*Id.* ¶ 11). He officially became a naturalized United States citizen on January 29, 2010, upon taking the oath of allegiance. (*Id.* ¶ 12).

On November 12, 2011, Mr. Briceno was charged by a Second Superseding Indcitment (DE 1-2) with multiple charges, including conspiracy to commit health care fraud. (DE 1 ¶ 20). The Complaint alleges that this conspiracy began in July 2008, when Mr. Briceno and others were alleged to have started operating a health care clinic, Manuel MC, LLC ("***Manuel***"), with the intention of defrauding medicare; the clinic administered expensive and unnecessary tests to patients for the purpose of billing medicare. (*Id.* ¶¶ 8, 14, 16). At some point, another two clinics became part of the scheme. (*Id.* ¶ 18). According to the Complaint, Mr. Briceno's involvement was that he signed at least one Medicare enrollment form. (*Id.* ¶ 14). Notably, although Mr. Briceno was charged after he naturalized, the United States alleges that his criminal conduct began prior.

On March 14, 2012, Mr. Briceno signed a written plea agreement (DE 1-3). (DE 1 ¶ 21). That same day, Mr. Briceno had his plea hearing before Judge Arthur J. Tarnow of the United States District Court for the Eastern District of Michigan. (DE 1 ¶ 27; DE 1-4 at 1). He pleaded guilty to one count of conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349. (DE 1 ¶ 27). During the plea, Judge Tarnow inquired into

any deportation consequences that Mr. Briceno could face as a result of his plea. (DE 1-4 at 5:3–4). Mr. Briceno's lawyer, Mr. Weiss, stated the following:

> Just so the record is clear, while Mr. Briceno became a naturalized citizen in early 2010 and there is an overlap between the period of the conspiracy alleged in the Second Superseding Indictment, Mr. Briceno advises -- and it will be part of his proffer today as we go forward -- that he became aware of the illegality after he became a naturalized citizen; and therefore there would not have been any misstatements pertaining to the immigration or naturalization process.

(*Id.* at 5:9–17). Judge Tarnow asked the Government their position, and they responded:

> The Government shares the view at least of the fact that the Defendant has been advised of potential immigration consequences. The Government does not have before it the naturalization paperwork that would indicate whether or not he informed CIS of that, but he certainly has been advised of the potential consequences that could attach by pleading guilty.

(*Id.* at 5:19–25). Shortly thereafter, Mr. Weiss elicited the following proffer from Mr. Briceno regarding the timing of his involvement in the conspiracy:

> **Mr. Weiss:** There came a point in time when you found out that your family member was paying patients to come to the clinic?
> **Mr. Briceno:** Yes
> **Mr. Weiss:** And you still allowed your name – –
> **Mr. Briceno:** Yes.
> **Mr. Weiss:** – – to be utilized to operate the clinic?
> **Mr. Briceno:** Yes.
> **Mr. Weiss:** And you found out about this after you became a United States citizen?
> **Mr. Briceno:** Yes.

(*Id.* at 9:2–13).

Over thirteen years later, on August 12, 2025, the United States initiated this action by filing their Complaint. (DE 1). The United States alleges four counts against Mr. Briceno: illegal procurement of naturalization by committing a crime involving moral turpitude ("***CIMT***") (Count I); illegal procurement of naturalization for committing unlawful acts (Count II); illegal procurement of naturalization for false testimony (Count III); and

procurement of U.S. citizenship by concealment of a material fact or willful mispreresentation (Count IV). (*Id.* at 12–16). The United States seeks a declaration that Mr. Briceno illegally procured his citizenship and procured his citizenship by concealment of material facts and willful misrepresentation. (*Id.* at 18). The United States also seeks a judgment revoking Mr. Briceno's naturalization, requiring him to turn in documentation of his naturalization, and preventing him from claiming benefits due to his naturalization. (*Id.* at 18–19).

On December 1, 2025, Mr. Briceno filed his Motion to Dismiss Plaintiff's Complaint (DE 11). He seeks to dismiss all four counts of the Complaint. (DE 11 at 8).

## II. LEGAL STANDARD

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept factual allegations as true and draw reasonable inferences in the plaintiff's favor. *See Speaker v. U.S. Dep't. of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010). While a claim need not provide "detailed factual allegations," it must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted).

"A complaint is facially plausible when there is sufficient factual content to allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1158 (11th Cir. 2019) (citations and quotation marks omitted).

## III. DISCUSSION

The United States seeks to revoke Mr. Briceno's naturalization. (DE 1 at 1). To do so, "[t]he government must prove by clear, unequivocal, and convincing evidence that the defendant was not eligible for his naturalization when he obtained it." *United States v. Prat*, No. 24-13407, 2025 WL 3081849, at *2 (11th Cir. Nov. 4, 2025). Among the requirements to naturalize are that the applicant "be a person of good moral character from five years before filing his application up to the time she is granted citizenship." *Id.* (quoting 8 U.S.C. § 1427(a)) (quotation marks omitted). Committing a crime involving moral turpitude during this period disqualifies someone from meeting the good moral character requirement. *See id.* (quoting 8 U.S.C. §§ 1101(f)(3) and 1182(a)(2)(A)(i)(I)).

Mr. Briceno argues that the Complaint fails to state a claim because its exhibits contradict the assertion made in the body of the Complaint, namely that Mr. Briceno had knowledge of and took part in the conspiracy prior to his naturalization. (DE 11 at 8). He also argues that a conviction for conspiracy to commit health care fraud under 18 U.S.C. §§ 1347 and 1349 does not qualify as a CIMT. (*Id.* at 16). The United States contends that collateral estoppel bars Mr. Briceno from arguing that he did not have knowledge of the conspiracy until after he naturalized. (DE 12 at 1). The Court first addresses whether collateral estoppel bars Mr. Briceno's defense. It then addresses each of Mr. Briceno's arguments in turn.[2]

---

[2] Mr. Briceno also argues that the doctrine of laches, his constitutional right to due process, or both should bar the United States from proceeding. (DE 11 at 19). At least at this point, the Court need not address whether the doctrine of laches is applicable. "Laches requires proof of . . . prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282 (1961). In evaluating prejudice, the Supreme Court has focused on prejudice specifically to the naturalized citizen's defense. *Id.* at 283 ("He suffered no prejudice from any inability to prove his defenses. Rather, the harm he may suffer lies in the harsh consequences which may attend his loss of citizenship."). Mr.

***A. Collateral estoppel does not bar Mr. Briceno from disputing when he became aware of and participated in the conspiracy.***

Collateral estoppel does not bar Mr. Briceno from defending against the United States' suit because the date range of the conspiracy for which he was convicted was not necessary to the judgment. Collateral estoppel, or issue preclusion, "forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *Islam v. Sec'y, Dep't of Homeland Sec.*, 997 F.3d 1333, 1341 (11th Cir. 2021) (citations omitted). "For federal issue preclusion to bar relitigation of a particular issue, (1) the relevant issue must be identical to the one involved in the prior proceeding, (2) the issue must have been actually litigated in the prior proceeding, (3) the determination of the issue must have been a critical and necessary part of the judgment in the prior proceeding, and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Id.* (citations omitted).

Here, the Parties dispute whether the dates during which Mr. Briceno was involved in the conspiracy were a critical and necessary part of the judgment in his criminal case. In *United States v. Munoz*, 112 F.4th 923 (11th Cir. 2024), the Eleventh Circuit directly addressed this issue. The United States sought to denaturalize Mr. Munoz by alleging that he "committed his drug-conspiracy crime during the good-moral-character period, therefore making his citizenship illegally procured." *Id.* at 932. The Eleventh Circuit found, "[b]ecause it did not need to prove when the conspiracy began, the starting date was

---

Briceno has only articulated generally that the delay has prejudiced him because he "has built his life as a U.S. citizen in the United States for over 15 years." (DE 11 at 19). He therefore has failed to establish prejudice. This also precludes him from advancing his due process argument. "Denaturalization, 'even after the lapse of many years, is not so unreasonable as to constitute a denial of due process.'" *United States v. Gkanios*, 536 F. App'x 854, 858 (11th Cir. 2013) (quoting *Costello*, 365 U.S. at 284).

unnecessary to the conspiracy conviction." *Id.* at 933. As a result, collateral estoppel was unavailable. *Id.* That conclusion rings particularly true here, where, during his plea, Mr. Briceno explicitly denied knowledge of the underlying criminal activity prior to his naturalization. If the date the conspiracy began was necessary to the judgment, the court would not have been able to accept Mr. Briceno's guilty plea.

The United States argues that *Munoz* is distinguishable from this case because, "Mr. Briceno does not deny the allegation, established by his Indictment, Plea Agreement, and Judgment, that he joined a conspiracy prior to his naturalization." (DE 12 at 10). That is incorrect. The second paragraph of Mr. Briceno's Motion states, "Mr. Briceno later learned—after becoming a U.S. citizen . . . that the clinic he helped his sister operate was involved in criminal activity involving Medicare fraud." (DE 11 at 7). Mr. Briceno testified as such during his plea, stating that he only learned that his family was paying patients to come to the clinic after he had naturalized. (DE 1-4 at 9:2–13).

Conspiracy requires that one "attempts or conspires" to commit an offense. 18 U.S.C. § 1349. One cannot commit conspiracy without knowledge of the underlying crime. *See United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir. 1979) ("Since knowledge, actual participation, and criminal intent are the necessary elements of the crime of conspiracy, the government must, of course, prove each of those elements beyond a reasonable doubt.") (citations omitted). By contesting when Mr. Briceno gained knowledge of the fraud, Mr. Briceno is challenging when he joined the conspiracy. Mr. Briceno's argument is the exact argument Mr. Munoz made: he did not join the conspiracy until after he naturalized. Consequently, "the government may prove that [Mr. Briceno] participated in the" conspiracy prior to his naturalization but "collateral estoppel does not

preclude [Mr. Briceno] from litigating the issue and arguing that his participation in the conspiracy began after he became a citizen." *Munoz*, 112 F.4th at 934. Upon finding that Mr. Briceno's defenses are not barred by collateral estoppel, the Court now turns to Mr. Briceno's first argument for dismissal.

***B. The Complaint states a claim, despite contradictions in the exhibits.***

Mr. Briceno's leading argument in support of dismissal is that his testimony during his plea hearing "reveals facts which foreclose recovery." (DE 11 at 11–12) (quoting *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)). In particular, Mr. Briceno points to his testimony during his plea that he only learned of the conspiracy after he applied for naturalization. (*Id.* at 13).

"[W]here a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 754 (7th Cir. 2002). "The classic example is when a plaintiff attaches a document to his complaint but his allegations about what the document is or says contradict the document itself." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). Here, the Parties are not contesting the content or meaning of the plea transcript attached to the Complaint. Stated differently, the ultimate issue is not what Mr. Briceno said during his plea but whether he knew of and participated in the the conspiracy prior to applying for naturalization. Therefore, Mr. Briceno's testimony, while certainly probative, does not resolve the ultimate issue.

The question, then, is whether Mr. Briceno's testimony should be considered as true fact for the purposes of this Motion. "[I]f a plaintiff's complaint contains only a

conclusory allegation that is directly contradicted by more concrete statements in an attachment to the complaint, the statements in the attachment will control." *Healthier Choices Mgmt. Corp. v. Philip Morris USA, Inc.*, 65 F.4th 667, 674 (Fed. Cir. 2023). However, "a plaintiff can sufficiently disavow statements in attachments to a complaint where the complaint makes a specific contention contradicting those statements." *Id.* Therefore, in circumstances where the allegations in the complaint contradict the statements in an exhibit, the court must "compare each relevant allegation in the complaint with its counterpart in the [exhibit] and decide if is [sic] specific enough to prevent that statement in the [exhibit] from being considered." *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 515 (11th Cir. 2019); *see Betterson v. Town of Cutler Bay*, No. 25-11638, 2026 WL 322952, at *1 (11th Cir. Feb. 6, 2026).

For example, in *Gill as Next Friend of K.C.R.*, the Eleventh Circuit considered which statements contained in a police officer's arrest affidavit, which was attached to the complaint, it should credit. 941 F.3d at 515. The court credited those statements in the arrest affidavit where the complaint generally stated that the police officer's "description of the fight was deliberately false and misleading" but did "not say what part of the description was false and misleading and in what way." *Id.* In contrast, where the complaint specified what portions of the arrest affidavit were incorrect – such as by stating that the defendant never confessed – the court did not credit the arrest affidavit. *Id.*

Here, the Complaint does not explicitly state that Mr. Briceno's testimony during his plea was false. However, the allegations in the Complaint contradict the content of Mr. Briceno's testimony with particularity. The Complaint states, "[f]rom the outset of his operation of Manuel, Defendant was aware that this clinic was established for the sole

purpose of defrauding Medicare by billing Medicare for expensive and medically unnecessary tests." (DE 1 ¶ 14). It also states, "[b]etween approximately July 2008 and January 2010, Defendant and his coconspirators caused the submission of $2,198,439 in false and fraudulent claims to Medicare for medically unnecessary services at Manuel that resulted in Medicare paying just the Manuel clinic $592,813 on those false and fraudulent claims." (*Id.* ¶ 19). Given the particularity with which this segment of the Complaint is pled, the Complaint implicity disputes Mr. Briceno's testimony during the plea hearing that he learned about the illicit activity at the clinic only after he became a citizen. Therefore, Mr. Briceno's testimony cannot be considered true for purposes of this Motion.

Mr. Briceno also argues that the Complaint does not establish when his participation in the conspiracy began because the exhibits contradict one another. (DE 11 at 13). According to the Second Superseding Indictment, the conspiracy started "in or around May 2007." (DE 1-1 at 5). According to the written plea agreement, however, the conspiracy started "in or around July 2008," and Mr. Briceno was aware of it "from the outset." (DE 1-3 at 2–3). The Complaint aligns with the written plea agreement, alleging that Mr. Briceno knew of the fraud from the outset and that the fraud took place between July 2008 and January 2010. (DE 1 ¶¶ 14, 19). While Mr. Briceno may have flagged another challenge for the United States to overcome in these proceedings, the Court must accept the particularly pled date in the Complaint as true despite the discrepancy between it and the Second Superseding Indictment. Therefore, accepting the United States' factual allegations as true and drawing reasonable inferences in its favor, the United States has stated a claim.

***C. Mr. Briceno's conviction qualifies as a CIMT.***

Mr. Briceno also challenges Count I and II of the indictment by arguing that Mr. Briceno's health care fraud conviction does not qualify as a CIMT. (DE 11 at 16). Mr. Briceno pled to Count I of the Second Superseding Indictment, which charged conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 1349. (DE 1-3 at 2). To evaluate Mr. Briceno's argument, the Court must consider whether conspiracy to commit health care fraud classifies as a CIMT under the categorical approach.

**i. The Court applies the categorical approach.**

"In resolving whether a conviction involves moral turpitude, this Court applies either the categorical approach or the modified categorical approach, depending on the statutory scheme." *Gelin v. U.S. Att'y Gen.*, 837 F.3d 1236, 1241 (11th Cir. 2016). In doing so, the Court asks "whether the least culpable conduct necessary to sustain a conviction under the statute meets the standard of a crime involving moral turpitude." *Id.* (quoting *Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1284 n.3 (11th Cir. 2009)). However, the approach changes somewhat if the statute "lists a number of alternative elements that effectively create several different crimes." *Id.* (quoting *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1281 (11th Cir. 2013)). In that case, the statute is considered "divisible" and the Court must use the modified categorical approach. *Id.* Under the modified categorical approach, the Court "may look beyond the fact of conviction and consider a limited class of documents, often called *Shepard* documents, to determine whether a prior conviction is a qualifying offense[.]" *Id.* However, if the "least culpable act" under a statute still "categorically constitutes a CIMT in any event," the court need not decide the divisibility question or apply the modified categorical approach. *See id.* at 1243.

That is the case here, as Mr. Briceno was convicted of a fraud offense. (DE 1 at ¶¶ 13–15; DE 1-3 at 2). "[F]raud offenses are—rightly or wrongly—categorically deemed to involve moral turpitude." *Zarate v. U.S. Att'y Gen.*, 26 F.4th 1196, 1202 (11th Cir. 2022). "Fraud requires that a misrepresentation be made to obtain a benefit from someone or cause a detriment to someone." *Id.* "The intent to deceive is not equivalent to the intent to defraud, which generally requires an intent to obtain some benefit or cause a detriment. There are many situations in which a person may have the intent to deceive without having the intent to defraud." *Id.* at 1206 (quoting *Ahmed v. Holder*, 324 F. Appx 82, 84 (2d Cir. 2009)). The Court next analyzes whether, under the categorical approach, the least culpable act that qualifies as healthcare fraud under 18 U.S.C. § 1347 meets this definition of fraud. Because the answer is yes, the Court need not apply the modified categorical approach.

**ii. The least culpable act that qualifies as healthcare fraud qualifies as a CIMT under the categorical approach.**

To apply the categorical approach, the Court starts with the language of the healthcare fraud statute. The statute states:

> (a) Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--
>
> (1) to defraud any health care benefit program; or
>
> (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. . ."

18 U.S.C. § 1347. Section 1349 then goes on to subject "[a]ny person who attempts or conspires to commit any offense under this chapter" to "the same penalties" as the underlying crime that they conspired to commit. *Id.* § 1349.

Mr. Briceno argues that 18 U.S.C. § 1347(a)(2) "does not require an intent to obtain a benefit from or cause a detriment to someone. It merely covers conduct involving obtaining money or property by false or fraudulent means." (DE 11 at 18–19). The Court disagrees. The first part of the section requires the crime to be "knowingly and willfully execute[d]."[3, 4] 18 U.S.C. § 1347(a). The knowing and willful mens rea applies to each element, including "obtaining money or property owned by, or under the custody or control of" another "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1347; *see Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009) ("[C]ourts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element.").

The Court need not delve further under the categorical approach. As explained, to violate 18 U.S.C. § 1347, one must knowingly and willfully defraud a heath care benefit program or obtain something from another by false or fraudulent conduct. Either way, to commit health care fraud, one must commit fraud or knowingly and willfully obtain a benefit from someone through a misrepresentation. Accordingly, the Court finds that the health care fraud statute satisfies the requirements described in *Zarate* and qualifies as

---

[3] Though Mr. Briceno later admits that 18 U.S.C. § 1347(a) "requires that the acts in subpart 1 and 2 be 'knowingly and willfully' done," he argues that this mens rea is lessened by the fact that specific intent is not required to commit the crime. (DE 11 at 20). However, he cites no case requiring fraud be committed with the specific intent to violate a particular statute in order to qualify as a CIMT. Willfulness is sufficient. *See Ndungu v. Att'y Gen. United States*, 126 F.4th 150, 160 (3d Cir. 2025).

[4] "[T]he word 'willfully' means that a person or entity charged as a defendant knowingly and intentionally committed acts which constitute the offense charged and that such acts were not committed accidentally or by some mistake." *United States v. Ettinger*, 344 F.3d 1149, 1158 (11th Cir. 2003) (quoting *United States v. Phillips*, 19 F.3d 1565, 1577 (11th Cir.1994)).

a CIMT. *See Kalu v. Att'y Gen. United States*, 702 F. App'x 40, 44 n.3 (3d Cir. 2017) (noting that "there is no dispute that Kalu has been convicted of a CIMT" where his conviction was for health care fraud under 18 U.S.C. § 1347).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Motion (DE 11) is **DENIED**.
2. Mr. Briceno is directed to file an Answer to the Complaint (DE 1) within **fourteen (14) days of the date of this Order**.

**DONE AND ORDERED** in Chambers in Miami, Florida, this 22nd day of September, 2026.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE